## WILLCOX *v.* BEECHWOOD BAND MILL COMPANY.

The provision of the act of 1918, amendatory of section 4043 of the Code of 1910 (Acts 1918, p. 122), that the appraisers appointed to set apart a year's support shall make a full and accurate description of the land so set apart, does not make the provision for "a careful plat" mandatory where a plat is not essential to a full and accurate description. For this reason the provision for a plat is merely directory in its nature, and substantial compliance with the requirement as a whole may be effected by a complete and accurate description.

No. 6133. MAY 17, 1928.

Petition for injunction. Before Judge Crum. Crisp superior court. June 25, 1927.

*Hal Lawson,* for plaintiff. *Strozier & Gower,* for defendant.

RUSSELL, C. J. The petition of Willcox prayed for injunction to prevent the Beechwood Band Mill Company from cutting or removing timber from certain land. Willcox had bought from Mrs. E. H. Harp the land which was described in a deed from Mrs. Lula B. Shepherd to E. H. Harp, dated February 26, 1926, and recorded, November 11, 1926, in deed book CC, page 168. The land had been set apart, by a judgment of the court of ordinary, as a year's support for the widow and minor children of said E. H. Harp. In the return of the appraisers the land so set apart was described as follows: "Fractional lot of land No. 25 in the 1st district of Wilcox County, Georgia, containing 190 acres, more or less, being the same land conveyed to E. H. Harp by Mrs. Lula B. Shepherd, dated February 26th, 1926, and recorded in clerk's office, Wilcox superior court, deed book CC, page 168; also 1-2 interest in lots of land Nos. 333 and 334 in the 14th district of Dodge County, Georgia; . . value of the above lands, $1000." Upon the application for injunction the learned trial judge did not exercise his discretion as to conflicts in the evidence upon the question whether Willcox (who had purchased the year's support from the widow of Harp) or the Beechwood Band Mill Company (which introduced testimony to the effect that Harp had transferred his interest in the land lot to that corporation sometime before his death) had a superior right in equity to "fractional lot number 25," containing 190 acres. No plat of the land was attached to the return of the appraisers appointed to set apart the year's support, and it did not appear that said appraisers had the land surveyed or a plat thereof made. The court

held as follows: "It appears from the evidence that a necessary link in the title of the plaintiff is a year's support set aside to Mrs. E. H. Harp out of her husband's estate, which plaintiff claims to pass the title into said Mrs. E. H. Harp for herself and minor children; and it further appearing that the report of the appraisers who set aside said year's support did not have attached thereto, or included therein, any plat of the land attempted to be set apart by the said appraisers, and the court being of the opinion that the said year's support is invalid as a link in plaintiff's chain of title, because of the failure to have a plat of the land set apart incorporated in the report or attached thereto; therefore it is considered, ordered, and adjudged by the court that the injunction sought by the plaintiff be and the same is refused, and the temporary restraining order heretofore granted is dissolved."

From the foregoing resumé of the record it will be seen that the only question before us is whether the requirement of the act of 1918 (Acts 1918, p. 122), amending section 4043 of the Code of 1910, which declares that "where any lands shall be included in the property set apart and assigned as a year's support, the appraisers so appointed in their return shall fully and accurately describe said land, and make a plat thereof, and they shall have power to procure the aid of the county surveyor of the county, or other competent surveyor, in making the survey and admeasurement of the lands so set apart, who shall be required to make a careful plat of the lands so set apart, showing the lengths of the boundary lines (except crooked natural boundaries), and the directions in which they run, and setting out all original lines and natural boundaries, so as to definitely and accurately describe the lands so set apart, which plat shall be made a part of the appraisers' return," is so mandatory as to require exact fulfillment by the execution of a plat and its incorporation into the return; or whether, considering the amendment of 1918 as a whole, the requirement that "a careful plat . . shall be made a part of the appraisers' return" is merely directory. Bearing in mind the frequent recurrence of cases in which this court has had to deal with instances of meager and inadequate description of land attempted to be set apart as a year's support, we are of the opinion that the whole purpose of the act was to require appraisers appointed to set apart and assign a year's support to "fully and ac-

curately describe said land.". The evil which the amendment sought to remedy was meagerness and inadequacy of description of land as to which the description was so vague and indefinite as to defeat the purpose of providing a year's support for the widow and minor children of a deceased person, which the lawmaking power in this State has always considered of such importance as to make it one of the expenses of administration. Bearing in mind the paramount dignity of the claim for year's support in comparison with other claims against the deceased, it would seem that if the appraisers "fully and accurately described" the land set apart, and in that case there could be no possible difficulty in identifying it, there might be cases in which the trouble and expense of making a plat could be dispensed with without in anywise conflicting with the purpose of the General Assembly in the passage of the amendment to section 4043 now under consideration. "Fully" means completely—nothing omitted from a proper description, and "accurately" is synonymous with correctly,—certainly so when the word "accurately" is used with reference to a description of land.

The land involved in this case, "fractional lot of land No. 25 in the 1st district of Wilcox County, Georgia, containing 190 acres, more or less," was surveyed by the State of Georgia many years ago, and its location, boundaries, and extent are presumably fully and accurately described, and the plat of file in the office of the Secretary of State would certainly equally import verity with a plat made by a local surveyor, who must use the corners and boundaries fixed by the original survey when this subdivision of the State was granted to the first grantee. The courts judicially know the facts as to the survey and grant of fractional lot of land number 25 in the 1st district of Wilcox County, and the making of a new plat for the purpose of setting apart a year's support would be altogether useless, because the deed under which E. H. Harp held the lot of land which the widow had set apart as a year's support (and under this deed both parties in this case claim to hold) "fully and accurately" describes the land in question as follows: "All that tract or parcel of land lying and being in the first district of Wilcox County, Georgia, and being known as the first part of lot of land number 25, beginning at the northwest corner of said lot and running east four degrees south to the

24

Ocmulgee River, and bounded on the east by the Ocmulgee River, on the south by House Creek, and on the west by the land known as the Sam Reid lands, . . containing 190 acres, more or less." We have omitted from the quotation an exception reserving to Mrs. Shepherd, the grantor, all the cypress timber on said land for 18 months, because both parties to this case admit this reservation. In this case, as both parties claim identically the same land the purpose of the General Assembly in passing the amendment to which we have referred, that is, to identify the land in question, has been accomplished. Both parties admitting the land to be the same, the question of identity is not in issue. Neither plaintiff nor defendant can claim more than E. H. Harp owned, though it may be that the Beechwood Band Mill Company can in no event hold more than part of land lot 25 in the 1st district of Wilcox County. The return of the appraisers setting apart the year's support takes in all of fractional lot number 25, and thus a plat of the year's support is already a matter of judicial knowledge. Consequently it requires no proof. *Kearce* v. *Maloy, 166 Ga.* 89 (142 S. E. 271).

In support of our view that the words in the amendment of section 4043, "and make a plat thereof," are merely directory, it has frequently been decided by this court that unless the act to be performed is required to be done in order to give the court jurisdiction, the instructions so given are only directory, and therefore that a substantial compliance with the requirement is sufficient to make the act valid. In *Spencer* v. *Columbus,* 150 *Ga.* 312 (103 S. E. 713), this court held that "The provision of the act of 1897 (Acts 1897, pp. 82-85), generally referred to as the validating act, and contained in section 445 et seq. of the Civil Code of 1910, which prescribes the time within which the judge of the superior court shall fix the hearing on the petition to validate an issue of municipal bonds, and the time within which he shall hear and determine the same, is directory only." In *Perkins* v. *Norristown School District,* 151 *Ga.* 414 (107 S. E. 42), the above ruling was reaffirmed in identical language. In as important a matter as the registration of voters, and where section 60 of the Code declares that the registrars "shall within said twenty days file with the clerk of the superior court a supplemental registration list showing the names of additional voters who are

entitled to vote at such election subsequent to the general State election," an old list of qualified voters was revised by adding the names of new voters, and no supplemental registration list was made. In these circumstances the Court of Appeals, in *Andrews v. Butts County,* 29 *Ga. App.* 302 (3), 304 (114 S. E. 912), held that "The fact that the registrars, in preparing the list of qualified voters for this special election, took the old list of qualified voters and revised it, adding new names of voters thereto, and filed it instead of filing a supplemental list as provided by the statute, was a mere irregularity, as this part of the statute is directory only, and not mandatory, and it does not appear that this non-compliance with its requirements had any effect upon the result of the election." The Code of 1910, § 4, par. 6, declares that "a substantial compliance with any requisition of the Code or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient; and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment." In *Wise* v. *State,* 34 *Ga.* 348, in construing section 4874 of the Code of 1910 (3165 of the Code of 1863), which requires the clerk of the superior court, when informed by the presiding judge that it is not possible for him to attend a regular term of said court, to adjourn the court to such time as the judge may direct, and advertise the same in the manner prescribed, this court held that this section "is directory to the clerk; and if not complied with, still the court may be held at the time fixed in the order of adjournment; and a party not prejudiced by the omission of the clerk can not complain."

In *Justices* v. *House,* 20 *Ga.* 328, it was held that "The law that requires the judges of the superior and inferior courts to sign the minutes is only directory; and the minutes, although not so signed, are to be considered valid, until it be shown that they have been disapproved by the court." In *Central Bank* v. *Kendrick, Dudley (Ga.),* 66, certain commissioners were required to take bond and security for the faithful payment of the rent of a bridge at Macon. The commissioners, instead of taking a bond as provided by statute, took Kendrick's promissory note. In an action upon the note, and in response to Kendrick's plea that the statute which required a bond had not been complied with, it was held that the taking of a note was a substantial compliance. The court

ruled that "Where there has been a substantial compliance with the law, the want of a rigid conformity with the mere letter of a statute requiring a bond to be taken is not a fatal objection to the bond.". *Whatley* v. *Waters,* 136 *Ga.* 701 (71 S. E. 1103), was a case in which this court dealt with one of the essentials of the return of the appraisers appointed to set aside a year's support, to wit, the time fixed by law within which such appraisers must make their return; and although it was declared in section 4043 of the Code that the appraisers shall make their return within thirty days, this court held that the law regulating the time within which the appraisers shall make their return was merely directory. In *Bush* v. *Clemons,* 161 *Ga.* 311 (130 S. E. 914), it was held that the proceeding to set aside the year's support was void, and it was incidentally stated in the course of the opinion that the return had no plat attached thereto; but it must be noted that the ruling turned upon the fact that the description of the land was void for uncertainty, being "400 acres of land $8000.00." The description of the land in the *Bush* case was so fatally vague and indefinite as to make the return obviously void even before the passage of the amendatory act of 1918, supra. And even if the description had been contained in any kind of muniment of title, the instrument of conveyance must necessarily have been adjudged to have been void for indefiniteness of description. In *Jackson* v. *Lee,* 161 *Ga.* 818 (131 S. E. 893), in which the writer dissented and Mr. Justice Gilbert specially concurred in the judgment, and there being no plat attached in that case, it was held by a majority of the court that the judgment setting aside the year's support was "not void on the ground that the property has been set apart subject to existing debts of the deceased, or on the ground that the appraisers have not filed with their report a plat of the land that was set apart." The writer dissented upon the ground that a year's support, being an expense of administration, can not be legally subjected to existing debts. In my opinion all debts are legally inferior to the year's support, which has always been classed by our law as "among the expenses of administration." Thus construed, it must be held that a majority of this court held, in the *Jackson* case, that the failure to file a plat of the land with their report does not avoid the return of the appraisers, if there is contained in the report or return of the appraisers a full and accurate description of the property set apart.

Furthermore, the action of the ordinary in admitting the return of the appraisers to record and recording the return under our law is in effect a judgment of the court, and the judgment of a court of competent jurisdiction can not be collaterally attacked for irregularity.  Civil Code (1910), § 5963.  Of course, if a judgment is void, it may be attacked anywhere at any time by anybody whose interest is affected by the purported judgment. But a judgment can not be arrested or set aside for any defect in the pleadings or record that might be amended before judgement. Civil Code (1910), § 5960.  This court having·held that the· return of appraisers setting aside a year's support is amendable by attaching thereto a plat, there appears to be no reason why it would not follow that the judgment of the court admitting the return of the appraisers to. record cured the defect.  In this case it must be presumed that, citation having been duly issued and the law otherwise complied with, the ordinary recorded the return and thereby made it the judgment of the court.  If objections were filed before him, and he ruled that as a matter of law the plat was not necessary, his ruling would have been that of a court of competent jurisdiction, and would have been binding upon all parties until regularly set aside in a proceeding for that purpose, and such judgment could not be collaterally attacked.  As said in 15 R. C. L. 859, "It is the well established general rule that a judgment of a court of competent jurisdiction can not be impeached collaterally for mere errors and irregularities, whether the court making them is one of limited and inferior or general and superior jurisdiction, even when these appear upon the face of the record.  There are many rights belonging to litigants—rights which a court may not properly deny, and yet if denied do not oust the jurisdiction or render the proceedings absolutely null and void; and the broad principle is that where a court has jurisdiction over the person and the subject-matter, no error in its exercise can make the judgment void.  In such cases the judgment is not subject to collateral attack for any errors committed by the court in the course of the proceedings, and it is immaterial how irregular the proceedings may have been.  .  .  A judgment is irregular when proper rules of practice have not been followed, or some necessary act has been omitted or done in an improper manner. .  .  The general rule is that an error of law does not furnish

ground for collateral attack on a judgment, nor, so long as a judgment is correct, can it be impeached by showing that the court proceeded upon erroneous principles in reaching its conclusion. Whenever a court is confronted with a question which it has a right to decide, its erroneous judgment will not be subject to collateral attack, irrespective of whether the mistake of law concerned the common statutory or constitutional law. A judgment is binding upon the parties although it is undoubtedly erroneous under the law, as subsequently declared by the courts." We conclude therefore that the court erred in adjudging the judgment of the ordinary to be void because no plat of the land set apart as a year's support was attached to or incorporated in the return of the appraisers, inasmuch as the judgment setting apart the year's support was not in a timely and proper manner subjected to direct attack upon appeal, as provided by section 5000 of the Code of 1910 as amended by the act of 1921, providing that all appeals from the courts of ordinary shall be entered within four days from the date of the judgment complained of (Acts 1921, p. 117), or by using other appropriate means for the purpose of setting aside the judgment of the ordinary.

*Judgment reversed. All the Justices concur, except*

GILBERT, J., dissenting. I am of the opinion that the trial judge correctly refused the application for injunction. Both parties in this case claim under a common grantor. The plaintiff claims as the grantee of Mrs. E. H. Harp, the widow of E. H. Harp, deceased, to whom and to her minor children land described as "fractional lot No. 25 in the 1st district of Wilcox County" was set apart as a year's support. The defendant, claims under E. H. Harp by transfer of his deed from Mrs. Shepherd. However, the description in the deed from Mrs. Shepherd to E. H. Harp is not the same as that in the judgment setting aside a year's support. In the latter the premises are described as fractional lot number 25 in the 1st district of Wilcox County, the boundaries of which are within the judicial cognizance of this court (*Kearce* v. *Maloy*, 165 *Ga.* 89 (supra), whereas in the deed by which Harp himself received title from Mrs. Shepherd the demised premises are described as "the first part" of lot of land number 25 in the first district of Wilcox County, "beginning at the northwest corner of said lot and running east four degrees south to the Ocmulgee

River, and bounded on the east by the Ocmulgee River, on the south by House Creek, and on the west by the land known as the Sam Reid lands, . . containing 190 acres, more or less." So far as appears from the record both parties are bound by the description in the deed from Mrs. Shepherd to Harp, without regard to what may be the boundary of the fractional lot number 25 in the first district of Wilcox County as originally platted and granted by the State. The nature of the description in this very case demonstrates the wisdom of the General Assembly in .the passage of the act of 1918 (Ga. Laws 1918, p. 122), amending section 4043 of the Code so as to require that the return of appraisers setting apart a year's support shall contain an accurate description of the land to be set apart, and likewise that there shall be attached to the return or incorporated therein "a careful plat" of the premises as a part of the return upon which the judgment of the ordinary is to be based. The language of the act of 1918 is so clear as to obviate the necessity for construction. The case is not one of many where a substantial compliance has been held the equivalent of literal obedience to the mandate of a statute. The past experience of this court in cases involving meager and frequently inadequate descriptions of land sought to be set apart as a year's support convinces me that it was not the intention of the General Assembly that the principle of many cases that can be cited, in which the language of certain statutes has been held to be merely directory and not mandatory, should be applied in construing the act of 1918. That statute looks at once to the old law, the evil, and the remedy. The trial judge did not err, in my opinion, in holding that since the passage of the act of 1918 a plat obtained by appraisers in the manner provided by law, "a careful plat," is an essential element of that full and accurate description required by the statute, an element so essential that the return of the appraisers without it would be void.

In *Bush* v. *Clemons,* 161 *Ga.* 311 (supra), the year's support was declared void on two grounds: (1) the description was insufficient; (2) there was no plat as required by law. So there were two reasons for affirming the judgment. The fact that one was sufficient does not render the other less important. Neither was accorded major control. In *Jackson* v. *Lee,* 161 *Ga.* 818 (supra), four of

the Justices concurring generally, and two specially, it was held that the year's support was not void. There was a reason for so holding, despite the fact that there was no plat. The *Bush* case was concurred in by all of the Justices, and is controlling. Moreover, the Court of Appeals has twice ruled in accord with the *Bush* case. *Mays* v. *Mays, 25 Ga. App.* 515 (103 S. E. 805); *Rhames* v. *Stokes, 28 Ga. App.* 598 (112 S. E. 380). Those rulings, in my opinion, are sound, and should be followed. It has been suggested, as an argument against the soundness of the rule holding the requirement of the act of 1918 as mandatory, that the legislature was aware that many judgments setting aside homesteads had failed; that insufficient descriptions had so resulted; and that the act of 1918 was intended to save such judgments. The word "shall" is used both as to the requirement of an "accurate description" and the "plat." If the General Assembly had intended the provision for a plat to be "directory," they could not appropriately have used the word "shall." They would have used some such word as "may." A great many descriptions in deeds to land have been declared insufficient. The legislature has not seen fit to provide that a plat "shall" accompany or be made a part of deeds to realty. The legislature knew that under existing law a plat could be made a part of a deed and thus serve to supplement the written description. It may make certain that which otherwise was uncertain. *Thompson* v. *Hill,* 137 *Ga.* 308, 315 (73 S. E. 640); *Wooten* v. *Solomon,* 139 *Ga.* 433, 435 (77 S. E. 375). The same was true of judgments setting aside a year's support. Prior to the act of 1918, a plat might have or could have been attached and made a part of the return. What then was the evil to be remedied, and what the remedy? To ask is to answer.